UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
                                                              :
CHRISTOPHER ROULE,                                            :
                                                              :
                                    Plaintiff,                :          Case No. 10-CV-5009 (BSJ)
                                                              :
                    v.                                        :
                                                              :
KEITH TOWNSEND MITCHELL and KETOMI                            :
COMPANY,                                                      :
                                    Defendants.               :
                                                              :
------------------------------------------------------------------------x


# MEMORANDUM IN SUPPORT OF

# DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

# PURSUANT TO RULES 12(b)(6) AND 12(b)(1)

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................. 1

II.  THE ALLEGED FACTS ...................................................................... 3

(A)  The Agreement ............................................................................ 3

(B)  The Business Produces and Sells Jewelry as per the Agreement ..................... 3

(1)  "Cage Designs": "Authored Solely By Plaintiff" and "Joint Designs" Under the Agreement ........................................ 4

(2)  "Shaker Designs," i.e., "Roule Designs": "Created Solely By Plaintiff" and "In Reliance on the Agreement" ................... 4

(3)  The Business Sells Cage Pieces and Shaker Pieces, Including "Roule Designs" ................................................ 5

(C)  After the Business Produces and Sells "Roule Designs" and Defendants Allegedly Breach the Agreement's Payment Terms, Plaintiff Decides to "Redirec[t] His Creative Efforts Back to His Own Independent Jewelry Business" ................................ 5

(D)  Allegations of Copyright Infringement ................................................ 6

III. THE COPYRIGHT INFRINGEMENT CLAIM SHOULD BE DISMISSED UNDER RULE 12(B)(6) ....................................................... 7

(A)  The Copyright Infringement Claim Must Be Plausible ................................ 7

(B)  The Court Should Dismiss the Copyright Infringement Claim Because the Allegations Make Clear That the Business Had a License to Sell the "Roule Designs" ............................................ 8

(1)  The Agreement Grants the Business a Nonexclusive License to Sell Designs Created Pursuant to the Agreement ................ 9

(2)  The Complaint Alleges That the "Roule Designs" Are Subject to the Agreement .......................................... 10

(3)  The So-Called "Roule Designs" Were Not Created "Independent" of the Business or Pursuant to Some "Other Business Endeavo[r]" ............................................ 11

(4)   The Complaint Pleads That Designs "Created Solely By Plaintiff" Are *Within* the Scope of the Agreement ................................. 13

(5)   Conclusion ........................................................................... 14

(C)   The Court Should Also Dismiss the Copyright Infringement Claim For Failure to Satisfy Rule 8 ..................................................... 14

(1)   The Complaint Fails to Identify a Single Issued Copyright That Is Allegedly Infringed .................................................... 15

(2)   The Complaint Fails to Describe the Allegedly Infringing Acts ...................................................................................... 15

(3)   The Complaint Fails to Allege "During What Time" Defendants Allegedly Infringed Any Copyrights .................................... 16

(4)   Conclusion ........................................................................... 17

(D)   The Court Should Also Dismiss the Copyright Infringement Claim For Failure to Register the "Roule Designs" With the Copyright Office ............................................................................. 17

IV.   THE STATE LAW CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12(B)(1) .................... 19

V.   LEAVE TO AMEND SHOULD BE DENIED ........................................ 19

VI.   CONCLUSION ............................................................................... 20

## I.     <u>INTRODUCTION</u>

Plaintiff Christopher Roule ("Plaintiff" or "Roule") believes he has not been compensated fairly under the terms of the contract he entered with his jewelry business partners, Defendants Keith Mitchell ("Mitchell") and Ketomi Company ("Ketomi" and, together with Mitchell, "Defendants").   In response, Plaintiff has manufactured an implausible copyright infringement claim in an attempt to intimidate Defendants by escalating a simple contract dispute into a federal action in the Southern District of New York.

Plaintiff claims that Defendants violated his copyright rights when, on behalf of the parties' joint jewelry business, they sold jewelry "created solely by Plaintiff."   However, the allegations make clear that the parties' verbal agreement grants Defendants a license to produce and sell the jewelry on behalf of the business (and that Plaintiff intended and was aware of this). Thus, as a matter of law, Defendants' acts of selling Plaintiff's allegedly copyrighted jewelry on behalf of the parties' business cannot subject them to liability for copyright infringement.

While Plaintiff apparently would have this Court believe that he created the subject jewelry "independent" from the business or pursuant to some "other business endeavor" (and therefore that the jewelry falls outside the scope of the verbal agreement), the Complaint alleges just the opposite.   Among other things, Plaintiff admits that (i) he created the jewelry "in reliance on the Agreement" and (ii), at the time he created the jewelry, he actually considered it subject to the agreement.   Further demonstrating that the subject jewelry was not designed pursuant to some "other business endeavor," the Complaint makes clear that (i) the business had access to and control of the subject jewelry, (ii) this access and control was authorized by Plaintiff and (iii) the subject jewelry, like all jewelry sold by the business, was created using the business's operations (which were funded 100% by Defendants).   If one is to believe Plaintiff's allegations

that Defendants' acts of selling the subject jewelry were not authorized by Plaintiff, one would have to accept the untenable premise that Defendants agreed to a business arrangement whereby their money would be used to fund the design and production of jewelry that the business would have no right to sell.   This, of course, makes no business sense.

Since the Complaint alleges that Defendants are licensees of the copyrights they allegedly infringed, the infringement claim is implausible on its face and should be dismissed.

The copyright infringement claim should also be dismissed for failing to meet the heightened pleading standard applicable under well-established law.   The Complaint fails to include the details of even one issued copyright registration that is allegedly infringed and is silent as to (i) even a rough estimate of how many infringing acts Defendants are accused, (ii) when within a roughly 3½–year period any act of infringement occurred or (iii) whether during any given year (2007, 2008, 2009 or 2010) any infringing acts occurred at all.

Since the sole federal claim fails (and the parties are not diverse), the Court should decline to exercise supplemental jurisdiction over the pendent state law claims.   Plaintiff's attempt to paralyze the business with a trumped-up copyright dispute while maneuvering his way into Federal Court should not be rewarded.

Finally, leave to amend should be denied because Plaintiff cannot re-plead his copyright infringement claim in any way that would not contradict the instant Complaint's allegations that make clear that Defendants are licensees of the copyrights they allegedly infringed.

## II.   THE ALLEGED FACTS[1]

### A.   The Agreement

Plaintiff was "an established jewelry designer" when, in "approximately 2005," Plaintiff and Mitchell "began discussing potential collaboration for the purposes of producing and selling jewelry."  (Complaint, ¶ 11)  Sometime between 2005 and 2007, Mitchell and Roule entered into an oral contract governing this "collaboration."  (Complaint, ¶ 12)  (The alleged oral contract is referred to in the Complaint and here as the "Agreement.")

As per the Agreement, Defendants provided 100% of the financing for the business's "operations" and funded all "cost[s] of producing items for sale."  (Complaint, ¶ 12(d))  Plaintiff provided no funds. (Complaint, ¶ 12(d))  Mitchell and Roule were to "collaborate in designing jewelry and be co-authors of the designs that they created jointly." (Complaint, ¶ 12(a))   (Such designs are referred to in the Complaint and here as "Joint Designs."  (*See, e.g.*, Complaint ¶¶ 2, 13))  Mitchell and Roule were free to create "independent jewelry designs" and to pursue "other business endeavors."  (Complaint, ¶ 12(b))  Any revenues derived from the sale of Joint Designs were to be split evenly among the three parties – 1/3 to Plaintiff; 1/3 to Defendant Mitchell and 1/3 to Defendant Ketomi.[2]  (Complaint, ¶ 12(e))  The Parties formed a "business." (Complaint, ¶¶ 14, 15) (referred to hereafter as the "Business")

### B.   The Business Produces and Sells Jewelry as per the Agreement

In 2006 or 2007, Plaintiff and Mitchell decided to name the Business "Mitchell-Roule" and began to produce and sell jewelry under that name.  (Complaint, ¶ 15)  The Business was "a successful jewelry business" from 2006 to 2009.  (Complaint, ¶ 14)

---

[1]   As required at this stage of proceedings, Plaintiff's allegations are accepted as true for purposes of this motion and restated herein as such.

[2]   Ketomi is an entity partially controlled by Mitchell.  (Complaint, ¶ 7)

### 1. **"Cage Designs": "Authored Solely By Plaintiff" and "Joint Designs" Under the Agreement**

"[B]ased on an original technique and designs conceived and engineered by Plaintiff" (Complaint, ¶ 16), the Business produced jewelry called "Cage Designs," also known as "Cage Pieces" (Complaint, ¶¶ 16-18).  These Cage Pieces included pieces "authored solely by Plaintiff."  (Complaint, ¶ 16)  Although Mitchell allegedly had no role in authoring these Cage Pieces, in 2006, "Mitchell and Plaintiff signed and submitted to the United States Copyright Office an affidavit" listing Plaintiff and Mitchell as joint "creators" of "Cage Design." (Complaint, ¶ 19 (affidavit states "we are the independent creators of 'Cage Design'"))

The Cage Pieces are "Joint Designs" under the Agreement.  (Complaint, ¶¶ 22, 34)

### 2. **"Shaker Designs, i.e., "Roule Designs": "Created Solely By Plaintiff" and "In Reliance On the Agreement"**

In 2008, Plaintiff designed certain jewelry pieces called "Shaker Designs," also known as "Shaker Pieces." (Complaint, ¶ 23)  The Complaint alleges that, like the Cage Pieces, "[m]ost of the Shaker Designs were "created solely by plaintiff" and that "Mitchell made no contribution to such designs."  (Complaint, ¶ 25)  However, unlike the Cage Pieces which Mitchell also allegedly had no role in creating, the Shaker Pieces are referred to in the Complaint as "Roule Designs."  (Complaint, ¶ 25)

Like the Cage Pieces, the so-called "Roule Designs" (Shaker Pieces) were created "[i]n reliance on the Agreement."  (Complaint, ¶ 23)[3]

---

[3]  Based on the Complaint, it appears that the only reason that Shaker Designs authored solely by Roule *are* considered "Roule Designs," while Cage Designs authored solely by Roule are *not* considered "Roule Designs," is that Plaintiff and Mitchell never registered the Shaker Designs with the U.S. Copyright Office listing them as joint creators, whereas they did so register the Cage Designs.  Plaintiff unilaterally applied to register the Shaker Designs with the Copyright Office listing himself as sole author 2½ months prior to commencing this lawsuit.  (Complaint, ¶ 29)

**3.      The Business Sells Cage Pieces and Shaker Pieces, Including "Roule Designs"**

The Complaint alleges that, "[t]hroughout 2008, 2009 and 2010," the Business sold an unspecified number of "Cage Pieces and Shaker Pieces, including Roule Designs," at Bergdorf Goodman and at "private sales" under the Mitchell-Roule name.  (Complaint, ¶ 30)  The Complaint also alleges that, from 2007 through May 2010, "jewelry under the name of Mitchell-Roule" was sold for $16,001 (2007), $131,620 (2008), $137,050 (2009) and $94,350 (2010). (Complaint, ¶ 30)

The Complaint then alleges that Defendants have failed to make complete payments due under the Agreement for sales of Joint Designs.  (Complaint, ¶ 31)

**C.      After the Business Produces and Sells "Roule Designs" and Defendants Allegedly Breach the Agreement's Payment Terms, Plaintiff Decides to "Redirec[t] His Creative Efforts Back to His Own Independent Jewelry Business"**

As noted above, the Agreement permitted Plaintiff – already "an established jewelry designer" when he entered the Agreement in 2005 (Complaint, ¶ 11) – to "pursue independent jewelry designs and other business endeavors" during the term of the Agreement (Complaint, ¶ 12(b)).  However, Plaintiff did not do so until January 2010:

> In January 2010, when Defendants had repeatedly and clearly demonstrated their unwillingness to comply with the terms of the Agreement, Plaintiff redirected his creative efforts back to his own independent jewelry business.

(Complaint, ¶ 28)  Pursuant to this "redirection," on April 15, 2010, Plaintiff unilaterally registered the above-mentioned Shaker Pieces, i.e., "Roule Designs," with the U.S. Copyright Office listing himself as the sole author.[4]  (Complaint, ¶ 29)

---

[4]      Although Plaintiff alleges that certificates of copyright registration issued by the U.S. Copyright Office are attached as Exhibit B (Complaint, ¶ 25), no such certificates are included in Exhibit B.  *Compare* Exhibit B *with* 17 U.S.C. § 410(a) (A certificate of

**D.**   <u>**Allegations of Copyright Infringement**</u>

The Complaint offers several allegations – all conclusory – that Defendants' production and sale of the "Roule Designs" were unauthorized and/or constituted copyright infringement:

- "Defendants' unauthorized production and sale of jewelry designed solely by Plaintiff . . ." (Complaint, ¶ 2)

- "Mitchell is personally involved in the infringing conduct alleged herein." (Complaint, ¶ 6)

- "As a result of Defendants' infringement of Plaintiff's copyrights . . ." (Complaint, ¶ 9)

- "Defendants . . . have been selling Roule Designs owned solely by Plaintiff without permission . . . ." (Complaint, ¶ 34)

- "Defendants' reproduction and sale of [the Roule Designs] . . . constitute willful and unauthorized reproductions . . . ." (Complaint, ¶ 37)

---

registration is issued "under the seal of the Copyright Office" and "shall contain the information given in the application, together with the number and effective date of the registration.").

### III.   THE COPYRIGHT INFRINGEMENT CLAIM SHOULD BE DISMISSED UNDER RULE 12(B)(6)

#### A.   The Copyright Infringement Claim Must Be Plausible

To survive a 12(b)(6) motion, a Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Procapui-Productores De Camaroes De Icapui Ltda v. Leyani*, 2010 U.S. Dist. LEXIS 65868, *7 (S.D.N.Y. June 22, 2010) ("A court need not defer to sweeping and unsupported allegations and conclusions of law in evaluating the sufficiency of a complaint."). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," dismissal is appropriate. *Iqbal*, 129 S.Ct. at 1950. Moreover, "where allegations set out in the complaint are contradicted by other matters asserted . . ., the court is not obliged to credit the allegations in the complaint." *Ariel (U.K.) Ltd. v. Reuters Group PLC*, 2006 U.S. Dist. LEXIS 79319, *14-15 (S.D.N.Y. Oct. 31, 2006), *aff'd* 277 Fed. Appx. 43, 45 (2d Cir. 2008) (affirming "the District Court's thorough and well-reasoned opinion" under *Twombly*).

The copyright infringement claim is implausible on its face (and fails as a matter of law) because the allegations make clear that the Business had a license to sell the "Roule Designs," the jewelry that is the subject of the infringement claim. Also, the allegations fail to satisfy Rule 8. Finally, Plaintiff has failed to allege that he has received certificates of registration of the allegedly infringed copyrights, a prerequisite to suit. For each of these reasons independently, the copyright infringement claim should be dismissed.

**B.**    **The Court Should Dismiss the Copyright Infringement Claim Because the Allegations Make Clear That the Business Had a License to Sell the "Roule Designs"**

Plaintiff's copyright infringement claim – premised upon alleged infringement of the "Roule Designs" – should be dismissed because Defendants, acting on behalf of the Business, had a license to sell the "Roule Designs."[5]

"A copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement." *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998).   "This is because the 'licensee of any of the rights comprised in the copyright, though it is capable of breaching the contractual obligations imposed on it by the license, cannot be liable for infringing the copyright rights conveyed to it.'" *Ariel*, 2006 U.S. Dist. LEXIS at *15 (quoting *United States Naval Inst. v. Charter Communications, Inc.*, 936 F.2d 692, 695 (2d Cir. 1991)).   "Dismissal of a claim for copyright infringement is proper where a contract underlying the suit clearly and unambiguously demonstrates the existence of the defendant's license to exploit the plaintiff's copyrights and where plaintiff has not shown any limitation on that license." *Ariel*, 2006 U.S. Dist. LEXIS at *15-16. "[N]onexclusive licenses may . . . be granted orally, or may even be implied from conduct."  *Graham*, 144 F.3d at 235.

While the Complaint states several times in conclusory manner that Defendants' production and sale of the "Roule Designs" were unauthorized (*see* Complaint, ¶¶ 2, 6, 9, 34, 37), "pleadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950.[6]

---

[5]    "[A] defendant's status as a valid licensee . . . 'may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint.'" *Ariel*, 2006 U.S. Dist. LEXIS 79319 at *16 (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).

[6]    These conclusory allegations are reproduced above at Section II(D).

The Complaint's well-pleaded allegations plainly allege the existence of a license permitting the Business to sell the "Roule Designs."  As discussed below in detail, the Complaint alleges that: (1) the Agreement contains a license; (2) the "Roule Designs" were created "in reliance on the Agreement"; and (3) the "Roule Designs" were not "independent jewelry designs" or created pursuant to some "other business endeavo[r]" (as those terms are used in the Agreement) and therefore do not fall outside the scope of the Agreement; and (4), while the "Roule Designs" were "created solely by Plaintiff," this allegation (even if true) does not render them outside the scope of the Agreement.  Moreover, the allegations in the Complaint, if credited, would lead to the untenable premise that Defendants agreed to a business relationship with Plaintiff whereby Defendants' financial resources would be used to fund Plaintiff's "independent" jewelry designs.

### 1.    The Agreement Grants the Business a Nonexclusive License to Sell Designs Created Pursuant to the Agreement

The Agreement clearly provides that the Business, formed "for the purposes of producing and selling jewelry" (Complaint, ¶ 11), has a license to sell jewelry created pursuant to the Agreement.  The Agreement provides that Defendants will pay 100% of "the costs of producing items *for sale*."  (Complaint, ¶ 12(d) (emphasis added))  It provides for the distribution of the Business's "*revenues*" equally among the three parties: Roule, Mitchell and Ketomi. (Complaint, ¶ 12(e) (emphasis added))  The Business actually sold jewelry from 2006 through 2009 – it was "a successful jewelry business."  (Complaint, ¶ 14)  Plaintiff's claim for breach of contract is premised on money he is allegedly owed as the result of the Business's sales of "Joint Designs" pursuant to the Agreement.[7]  (Complaint, ¶¶ 31, 41)  Thus, the Complaint clearly

---

[7]      In this regard, even if the Complaint did not allege that a license was granted orally as an express component of the Agreement, it certainly alleges that a license was implied from

pleads that the Business had a nonexclusive license to sell jewelry created pursuant to the Agreement.

### 2. The Complaint Alleges That the "Roule Designs" Are Subject to the Agreement

The Complaint affirmatively pleads that the so-called "Roule Designs" were created subject to the Agreement and are within its scope.

*First*, the Complaint expressly alleges that Plaintiff created the "Roule Designs," i.e., Shaker Designs, "[i]n reliance on the Agreement." (Complaint, ¶ 23)

*Second*, the Complaint alleges that, at the time Plaintiff created the "Roule Designs" in 2008, his "creative efforts" were directed toward the Business; not until January 2010, when Defendants allegedly made clear that they were not going to pay Plaintiff in accordance with the Agreement, did he "redirec[t] his creative efforts back to his own independent jewelry business." (Complaint, ¶ 28)  Indeed, whereas Plaintiff was "an established jewelry designer" in "approximately 2005" when Plaintiff and Mitchell "began discussing potential collaboration" (Complaint, ¶ 11), the Complaint alleges that it was not until:

> . . . *January 2010*, when Defendants had repeatedly and clearly demonstrated their unwillingness to comply with the terms of the Agreement, [that] Plaintiff redirected his creative efforts *back to his own independent jewelry business*.

(Complaint, ¶ 28) (emphasis added) Thus, the Complaint pleads that, between 2006 when the Business commenced operations (Complaint, ¶ 14) and January 2010, Plaintiff's "creative efforts" were not directed toward any "independent jewelry business."  It follows that, since the "Roule Designs" were "created solely by Plaintiff" in 2008 (Complaint, ¶¶ 23, 25), the allegation at paragraph 28 is an admission that, when Plaintiff created the "Roule Designs," those "creative

---

conduct.  *See Graham*, 144 F.3d at 235 ("[N]onexclusive licenses may . . . be granted orally, or may even be implied from conduct.").

efforts" were directed toward the Business.  Indeed, at that point, he had yet to "redirec[t] his creative efforts *back* to his own independent jewelry business."  (Complaint, ¶ 28 (emphasis added))  It was Defendants' alleged breach of the Agreement, made clear in January 2010, that caused Plaintiff to undertake this "redirect[ion]."[8]  The only reasonable inference based on the allegation at paragraph 28 is that, from the time he created the "Roule Designs" until January 2010, Plaintiff himself believed the "Roule Designs" were subject to terms of the Agreement.

Thus, Plaintiff in his pleading admits that (i) he created the "Roule Designs" "in reliance on the Agreement" and (ii), when he created the "Roule Designs," his creative efforts were directed toward the Business and he believed the "Roule Designs" to be subject to the terms of the Agreement.  Based on these admissions alone, Plaintiff's copyright infringement claim should be dismissed because they establish that the "Roule Designs" were subject to the Agreement and the Agreement's license permitting the Business to sell them.

3.    **The So-Called "Roule Designs" Were Not Created "Independent" of the Business or Pursuant to Some "Other Business Endeavo[r]"**

The Agreement entitled Roule and Mitchell each to pursue "independent jewelry designs and other business endeavors." (Complaint, ¶ 12(b))  Thus, any such "independent jewelry designs" or "other business endeavors" would fall outside the scope of the Agreement and, therefore, the license it contains.  However, the Complaint does not allege that the "Roule

---

[8]     Pursuant to this "redirection," Plaintiff, on April 15, 2010 (2½ months prior to commencement of this litigation) surreptitiously and wrongfully applied to register the "Roule Designs" with the U.S. Copyright Office listing himself as the sole author (Complaint, ¶ 29), a step no doubt taken in contemplation of this lawsuit.  *See* 17 U.S.C. § 411(a) (registration is prerequisite to suit).  Although Defendants may, at the appropriate juncture, contest the validity of these attempted registrations (made by submitting a minimal filing fee), whether Roule is, in fact, rightfully the sole owner of the allegedly infringed copyrights is irrelevant to the instant motion.  The Complaint alleges that, even if Roule is the rightful owner of the copyright rights to the "Roule Designs," he granted the Business a license to produce and sell them.

Designs" are "independent" of the Business or that they were created pursuant to any "other business endeavo[r]."   Nor does Plaintiff allege the existence of any independent business operation capable of producing and selling the "Roule Designs."   To the contrary, not only does Plaintiff admit in his pleading that the "Roule Designs" were created "[i]n reliance on the Agreement" and that, when he created the "Roule Designs," his "creative efforts" were directed toward the Business, *see above*, Section III(B)(2), his allegations also make clear that (i) the Business's access to and control of the "Roule Designs" were proper and authorized by Roule and (ii) that the "Roule Designs" were created using the Business's "operations" (which were funded 100% by Defendants, as per the Agreement).   Accordingly, the "Roule Designs" cannot be "independent jewelry designs" or "other business endeavors."

As the terms of the alleged Agreement make clear, the Business had (or used) certain "operations" which Mitchell and Ketomi financed 100%.  (Complaint, ¶ 12(d))  The Complaint does not allege the nature of the Business's "operations" (i.e., the electronic systems or machinery required to design and "produc[e] in metal" the jewelry (Complaint, ¶ 17)).   However, the inference that the "Roule Designs" were created using these "operations" is inescapable (i.e., there is no competing inference) based on the confluence of two of the Complaint's features:

- ***First***, the allegations make clear that the Business had access to and control of the "Roule Designs."   Indeed, the Business sold the "Roule Designs" at Bergdorf Goodman and in "private sales" under the Mitchell-Roule name.  (*See e.g.*, Complaint, ¶¶ 27, 30)

- ***Second***, glaringly absent from the Complaint is any allegation that the Business gained this access to and control of the "Roule Designs" by theft, misappropriation, fraud, any other wrongful taking or scheme.

Accordingly, the only inference that can be drawn from the allegations is that the Business's access to and control of the "Roule Designs" was proper and authorized by Roule and, moreover, that the "Roule Designs" were created using the Business's "operations."  The Complaint does not even attempt to explain how Defendants, for years, could possibly have had access to and control of the "Roule Designs," selling them at Bergdorf Goodman, if such designs were actually "independent" of the Business.  This gaping hole in Plaintiff's story, by itself, renders his copyright infringement claim implausible.

Accordingly, the Complaint fails to plead that the so-called "Roule Designs" were "independent jewelry designs" or "other business endeavors" and therefore that they fall outside the scope of the Agreement as per its terms.  (Complaint, ¶ 12(b))  To the contrary, the Complaint makes clear that the "Roule Designs" are subject to the Agreement.[9]

### 4.  The Complaint Pleads That Designs "Created Solely By Plaintiff" Are *Within* the Scope of the Agreement

That the "Roule Designs" were allegedly "created solely by Plaintiff" (Complaint, ¶ 25) cannot be a basis for arguing that they fall outside the scope of the Agreement.  Indeed, the Cage Designs are allegedly "authored solely by Plaintiff" (Complaint, ¶ 16) and they are the subject of Plaintiff's breach of contract claim.  Since Plaintiff's claim for breach of the Agreement is premised on allegedly uncompensated sales of Cage Designs "authored solely by Plaintiff," the Complaint clearly pleads that the Agreement covers designs "created solely by Plaintiff."[10]

---

[9]     Plaintiff would have this Court believe that, in agreeing to the terms of the Agreement, Defendants voluntarily entered an arrangement whereby their funds (which comprised 100% of the Business's investment capital (Complaint, ¶ 12(d)) would be used to fund the design and production of jewelry that the Business would have absolutely no right to sell.  This premise is absurd from a business standpoint and implausible in light of the alleged facts.

[10]    The Complaint makes no distinction between "created" and "authored" and uses them interchangeably.  *See, e.g.*, Complaint, ¶ 12(a) (alleging that the Agreement provided that

5. <u>**Conclusion**</u>

As the aforementioned allegations make clear, Plaintiff granted the Business a license to sell the "Roule Designs." Plaintiff has therefore waived his right to sue the Business, or Defendants personally for their acts taken on behalf of the Business, for copyright infringement. *See Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998) ("A copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement."). Thus, while Defendants could conceivably be liable in some way for a breach of any contractual obligations imposed on the Business by the license, they cannot be liable for infringing the copyright rights conveyed to the Business. *Ariel*, 2006 U.S. Dist. LEXIS at *15. Accordingly, the Court should dismiss the copyright infringement claim.

C. <u>**The Court Should Also Dismiss the Copyright Infringement Claim For Failure to Satisfy Rule 8**</u>

The copyright infringement claim should also be dismissed for failure to satisfy the pleading standard of Rule 8. In addition to the "plausibility" standard of *Iqbal* and *Twombly*, *see above*, Section III(A), Plaintiff must satisfy the heightened pleading standard applicable to copyright infringement claims. Indeed, "Rule 8(a)(2) has been construed to require a plaintiff to plead with specificity the acts by which a defendant has committed copyright infringement." *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 230 (S.D.N.Y. 2000). He must allege "by what acts during what time the defendant infringed the copyright." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994). The Complaint must set out

---

"Plaintiff and Mitchell would . . . be co-*authors* of the designs that they *created* jointly" (emphasis added)); Complaint, ¶ 19 (alleging that the copyright registration of the Cage Designs "lists Mitchell and Plaintiff as joint *authors*" and then quoting the registration as stating that Mitchell and Plaintiff are "the independent *creators* of 'Cage Design'" (emphasis added)); *compare* Complaint, ¶ 25 (alleging that the Shaker Designs were "*created* solely by Plaintiff" (emphasis added)) *with* Complaint, ¶ 29 (alleging that Plaintiff is the "sole *author*" of the Shaker Designs (emphasis added)).

the "particular infringing acts . . . with some specificity.   Broad, sweeping allegations of infringement do not comply with Rule 8." *Id.* at 36 n.3 (citation omitted); *see also Jacobs v. Carnival Corp.*, 2009 U.S. Dist. LEXIS 31374, *11 (S.D.N.Y. Mar. 25, 2009) ("Courts in [the Southern] District have consistently followed the . . . standard set forth in *Kelly*.").

The Complaint here is devoid of specifics with respect to the particular copyrights allegedly infringed, the "particular infringing acts," *Kelly*, 145 F.R.D. at 36 n.3, and "during what time the defendant infringed the copyright," *id.* at 36.

### 1.   The Complaint Fails to Identify a Single Issued Copyright That Is Allegedly Infringed

The Complaint fails to identify a single registered copyright that is allegedly infringed. Although Plaintiff alleges that the document attached as Exhibit B is a certificate of registration (Complaint, ¶ 25), it clearly is not.[11]   Nor has Plaintiff provided Defendants with the deposit copies of the pending applications for registration.   Based on the Complaint, Defendants cannot tell what issued copyright(s) they have allegedly infringed.

### 2.   The Complaint Fails to Describe the Allegedly Infringing Acts

The Complaint's several conclusory allegations that Defendants' production and sale of the "Roule Designs" were unauthorized (*see* Complaint, ¶¶ 2, 6, 9, 34, 37) are "not entitled to the assumption of truth," *Iqbal*, 129 S. Ct. at 1950, and insufficient under any standard including, of course, the *Kelly* standard.   These allegations must be disregarded.   *See BanxCorp v. Costco Wholesale Corp.*, 2010 U.S. Dist. LEXIS 70380, *20 (S.D.N.Y. July 13, 2010) ("The [complaint] repeatedly refers to the BanxQuote Indices as "original" and "creative," but without underlying facts supporting these conclusions, such statements are not by themselves sufficient."

---

[11]   *See* 17 U.S.C. § 410(a) (A certificate of registration is issued "under the seal of the Copyright Office" and "shall contain the information given in the application, together with the number and effective date of the registration.").

(citations omitted) (quoting *Twombly*, 550 U.S. at 555)).

Once Plaintiff's legal conclusions are stripped away, the Complaint offers only scant and vague details regarding the alleged acts of copyright infringement.  The Complaint alleges that, "[t]hroughout 2008, 2009 and 2010," the Business sold an unspecified number of unspecified "Cage Pieces and Shaker Pieces, including Roule Designs," at Bergdorf Goodman and at "private sales" under the Mitchell-Roule name.  (Complaint, ¶ 30)  The Complaint then alleges that, from 2007 through May 2010, "jewelry under the name of Mitchell-Roule" was sold for $16,001 in 2007; $131,620 in 2008; $137,050 in 2009 and $94,350 in 2010.  (Complaint, ¶ 30)

Because these allegations lump sales of "Roule Designs" (the allegedly infringing sales) together with sales of "Joint Designs" (allegedly non-infringing sales), without discriminating between the two, it is impossible for Defendants to know (i) how many infringing acts they stand accused of (even roughly), (ii) when within a roughly 3½–year period any particular act of infringement occurred or (iii) whether during any given year (2007, 2008, 2009 or 2010) any infringing acts even occurred at all.   The allegations supporting the copyright infringement claim, taken in total, allege merely that at least two "Roule Designs" (paragraph 30 uses "Roule Designs," i.e., the plural form) were sold sometime during a roughly 3½–year period and does not even identify a copyright that was allegedly infringed.

**3.    The Complaint Fails to Allege "During What Time" Defendants Allegedly Infringed Any Copyrights**

While Plaintiff need not plead each individual act of infringement and assign a particular date to each, the Complaint must allege "during what time" the allegedly infringing acts occurred. *Kelly*, 145 F.R.D. at 36.  The Complaint's 3½–year period is not the type found acceptable under *Kelly*.  *See Tangorre v. Mako's, Inc.*, 2002 U.S. Dist. LEXIS 1658, *9 (S.D.N.Y. Jan. 30, 2002) (*Kelly* satisfied where *pro se* Complaint set forth a "limited period" of

3½ *months* during which the allegedly infringing acts occurred; "apply[ing] the pleading requirements with some leniency . . ., given [plaintiff's] *pro se* status"); *Kelly*, 145 F.R.D. at 36 n.3 (infringement claim adequately supported when plaintiff narrowed the infringing act to the publishing and distribution of two specific songs during 1991).  Moreover, whereas an allegation of "continuous and ongoing infringement" would satisfy Rule 8, *see Elektra Entm't Group, Inc. v. Santangelo*, 2005 U.S. Dist. LEXIS 30388, *9 (S.D.N.Y. Nov. 28, 2005), the Complaint makes no such allegation with respect to the "Roule Designs."  Indeed, while paragraph 34 of the Complaint alleges that "Defendants . . . continue to sell *Joint Designs*," it alleges differently with respect to "Roule Designs," merely that Defendants "have been selling Roule Designs." (Complaint, ¶ 34 (emphasis added))  Finally, the Complaint does not allege where or when the alleged "private sales" occurred.

### 4.   Conclusion

 "[I]t is axiomatic that plaintiff's claims cannot rest on inchoate and conclusory accusations of unauthorized copying.  Rather, in articulating her cause of action, plaintiff must identify, with specificity, the original works that are the subject of her copyright claim *and* which acts committed by defendants constitute infringement of her rights." *Broughel v. Battery Conservancy*, 2009 U.S. Dist. LEXIS 35048, *11-12 (S.D.N.Y. Mar. 30, 2009) (applying *Kelly*) (emphasis added). As the aforementioned allegations make clear, Plaintiff's copyright infringement claim fails to satisfy Rule 8 and the *Kelly* standard and should be dismissed.

### D.   The Court Should Also Dismiss the Copyright Infringement Claim For Failure to Register the "Roule Designs" With the Copyright Office

In addition to the reasons provided in Sections III(B) and (C) above, the Court should dismiss the copyright infringement claim for failure to state a claim because Plaintiff has failed to allege that he has received a certificate of registration from the U.S. Copyright Office.

The Copyright Act requires registration of copyright as a precondition to suit, and any suit premised on an alleged infringement of an unregistered copyright fails on the merits under Rule 12(b)(6).  *See Reed Elsevier, Inc. v. Muchnick*, -- U.S. --, 130 S.Ct. 1237, 1248 (2010), discussing 17 U.S.C. § 411(a).  The mere filing of an application to register copyrights does not constitute "registration" under 17 U.S.C. § 411(a).  *DO Denim, LLC v. Fried Denim, Inc*., 634 F. Supp. 2d 403, 406-07 (S.D.N.Y. 2009), relying on *La Resolana Architects, PA v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1200-01 (10th Cir. 2005) ("[T]he Register of Copyrights must affirmatively determine copyright protection is warranted . . . before registration occurs under the Act. And only upon registration or refusal to register is a copyright holder entitled to sue for copyright infringement.") (*abrogated on other grounds by Reed Elsevier,* 130 S.Ct. at 1243 n.2, 1248); *but see Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp*., 210 F. Supp. 2d 147, 157 (E.D.N.Y. 2002).[12]

Here, the document attached as Exhibit B which Plaintiff states to be a certificate of registration (Complaint, ¶ 25) is not a certificate of registration.[13]  That Plaintiff apparently applied to register the "Roule Designs" on April 15, 2010 (Complaint, ¶ 29) is insufficient to state a claim for copyright infringement.  *See Resolana Architects*, 416 F.3d at 1200-01; *DO Denim,* 634 F. Supp. 2d at 406-07.

Accordingly, in addition to the reasons provided in Sections III(B) and (C) above, the Court should dismiss the copyright infringement claim because Plaintiff has failed to meet the precondition to suit under 17 U.S.C. § 411(a).

---

[12]    In *Reed Elsevier*, the Supreme Court ruled that the registration requirement of 17 U.S.C. § 411(a) is not jurisdictional.  *Reed Elsevier*, 130 S. Ct. at 1241.  The Supreme Court did not address the issue of whether a plaintiff has satisfied the registration requirement simply by submitting a registration application to the Copyright Office.

[13]    *See above*, footnotes 4, 11.

## IV.    THE STATE LAW CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12(B)(1)

Count II (breach of contract), Count III (accounting) and Count IV (violation of right of publicity) arise under state law.  Subject matter jurisdiction over these claims is premised solely on supplemental jurisdiction under 28 U.S.C. § 1367(a).   In the event the Court grants Defendants' motion to dismiss Count I alleging copyright infringement (the sole federal claim), the Court should decline to exercise supplemental jurisdiction over the state law claims.  *See* 28 U.S.C. § 1367(c)(3); *N.Y. Mercantile Exch., Inc. v. IntercontinentalExchange, Inc*., 497 F.3d 109, 118-119 (2d Cir. 2007) ("[D]istrict court acted well within the bounds of its discretion" when, having correctly found that plaintiff's federal copyright claim fails, it declined to exercise supplemental jurisdiction over state law claims.); *Cabell v. Zimmerman*, 2010 U.S. Dist. LEXIS 25486, *12 (S.D.N.Y. Mar. 12, 2010) ("Because plaintiff's copyright claim was the only alleged basis for federal subject matter jurisdiction (plaintiff and defendant are both New York residents), the Court declines to exercise jurisdiction over Plaintiff's remaining state law claims."); *see also Ariel*, 2006 U.S. Dist. LEXIS at *33 ("[T]he mere fact that a disputed contract revolves around patent rights is insufficient to create federal jurisdiction.") (citing cases).

Accordingly, Defendants respectfully request that the Court dismiss Plaintiff's state law claims (Counts II, III and IV) for lack of subject matter jurisdiction.

## V.    LEAVE TO AMEND SHOULD BE DENIED

"Courts of this Circuit have refused to grant leave to re-plead after dismissing copyright claims, pursuant to Rule 12(b)(6), on the ground that defendants are licensees of the copyrights." *Ariel*, 2006 U.S. Dist. LEXIS at *31 (citing cases).   In *Ariel*, the Court reasoned that "[a]ny complaint alleging that defendants do not hold licenses in the intellectual property at issue would necessarily and impermissibly contradict the . . . facts alleged in [plaintiff's] earlier two

pleadings." *Id*. at *32.  Accordingly, any "amendment would be an exercise in futility as well as a waste of judicial resources." *Id*. (quotation and citation omitted).

Here, Plaintiff cannot re-plead his copyright infringement claim in any way that would not contradict the instant Complaint's allegations making clear that the Business had a license to sell the "Roule Designs."  Therefore, leave to amend should be denied.  *See Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000) ("A district court has broad discretion in determining whether to grant leave to amend, and we review such determinations for abuse of discretion.").

## VI.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court (i) dismiss the copyright infringement claim (Count I) for failure to state a claim upon which relief may be granted, (ii) dismiss the state law claims (Counts II, III and IV) for lack of subject matter jurisdiction and (iii) deny Plaintiff leave to amend.

Dated:  New York, New York
        August 3, 2010

POHL LLP

By:    /s/ David M. Pohl
            David M. Pohl (DP-8609)

275 Madison Avenue, 14th Floor
New York, New York 10016
(212) 202-1614
david.pohl@pohllaw.com

*Attorneys for Defendants Keith Townsend Mitchell and Ketomi Company*