UNITED STATES DISTRICT COURT          ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| CHRISTOPHER ROULE, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 10 Civ. 5009 (BSJ) |
| | : | |
| KEITH TOWNSEND MITCHELL and KETOMI | : | ECF Case |
| COMPANY, | : | |
| | : | |
| Defendants. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

Michael Potenza
(mpotenza@debevoise.com)
Megan K. Bannigan
(mkbannig@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-7497


*Attorneys for Plaintiff*


October 19, 2010
New York, New York

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ........................................................................................4

     A.    The Parties' Business Relationship....................................................4

     B.    Defendants' Failure to Compensate Plaintiff..............................5

     C.    The Shaker Pieces .............................................................6

     D.    Defendants' Repudiation of the Agreement and Infringement...................7

ARGUMENT ..................................................................................................11

I.    Motion to Dismiss Standard...........................................................11

II.    The Amended Complaint Pleads An "Actual Controversy" Arising Under the Copyright Act............................................................................12

     A.    The Claim for Declaratory Relief Seeks Traditional Copyright Remedies and Requires Construction of the Copyright Act.....................13

     B.    An "Actual Controversy" Exists Regarding Ownership of the Roule Designs. ...........................................................................15

III.    Plaintiff Has Properly Pleaded Copyright Infringement.........................18

     A.    The Amended Complaint Alleges Infringing Sales by Defendants..........18

     B.    The Amended Complaint Alleges Infringing Sales Outside the Scope of Any License. ...........................................................19

CONCLUSION................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*AARP v. 200 Kelsey Assoc., LLC*, 06-81, 2009 WL 47499 (S.D.N.Y. Jan. 8, 2009) .............................................................................................15, 17

*Agee v. Paramount Commc'n, Inc.*, 59 F.3d 317 (2d Cir. 1995) .......................................21

*Amy Axelrod, Inc. v. Simon & Schuster, Inc.*, 07-891, 2007 WL 2412257 (S.D.N.Y. Aug. 27, 2007) .............................................................................22

*Archie Comic Publ'n, Inc. v. DeCarlo*, 00-5686, 2001 WL 1543526 (S.D.N.Y. Dec. 3, 2001)...............................................................................16

*Arista Records LLC v. Doe*, 604 F.3d 110 (2d Cir. 2010) ...............................................11

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) .......................................................................12

*Barnhart v. Federated Dep't Stores, Inc.*, 04-3668, 2005 U.S. Dist. LEXIS 3631 (S.D.N.Y. Mar. 8, 2005) .....................................................................15

*Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343 (2d Cir. 2000)....................13, 18, 22

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ........................................................11, 12

*Cosa Instrument Corp. v. Hobre Instruments BV*, 698 F. Supp. 2d 345 (E.D.N.Y. 2010).................................................................................................16

*DeCarlo v. Archie Comics Publ'n, Inc.*, 127 F. Supp. 2d 497 (S.D.N.Y. 2001) .............................................................................................................13, 14

*E. Gluck Corp. v. Rothenhaus*, 585 F. Supp. 2d 505 (S.D.N.Y. 2008)..............................20

*Fifty-Six Hope Rd. Music Ltd. v. UMG Recordings, Inc.*, No. 08-6143, 2010 WL 3564258 (S.D.N.Y. Sep. 10, 2010) ...........................................15

*Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985)..........................................................11

*Hamil Am., Inc. v. GFI*, 193 F.3d 92 (2d Cir. 1999)........................................................19

*Huurman v. Foster*, 07-9362, 2010 WL 2545865 (S.D.N.Y. Jun. 21, 2010) ....................16

*Jeffrey Banks, Ltd. v. Jos. A. Bank Clothiers, Inc.*, 619 F. Supp. 998 (D. Md. 1985)..........................................................................................16

*La Grande v. DeCrescente Distrib. Co., Inc.*, 370 Fed. App'x 206 (2d Cir. 2010) ..................................................................................................11

*Linzer Prods. Corp. v. Sekar*, 499 F. Supp. 2d 540 (S.D.N.Y. 2007).........................12, 18

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) ...............................12

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007).........................................15, 16

*Mfr. Hanover Corp. v. Maine Sav. Bank*, 225 U.S.P.Q. 525 (S.D.N.Y. 1985) ..................................................................................................16

*Official Committee of Unsecured Creditors v. Coopers & Lybrand, LLP*, 322 F.3d 147 (2d Cir. 2003).........................................................................20

*Ortiz v. Guitian Music Bros., Inc.*, 07-3897, 2009 U.S. Dist. LEXIS 65191 (S.D.N.Y Jul. 28, 2009) ............................................................................22

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998) ...............................20

*Panther Partners Inc. v. Ikanos Commc'n, Inc.*, 347 Fed. App'x 617 (2d Cir. 2009) ..................................................................................................12

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57 (2d Cir. 2010) ..................................................................................................18

*Phillips v. Audio Active, Ltd.*, 494 F.3d 378 (2d Cir. 2007) ......................................14-15

*Ritz Hotel, Ltd. v. Shen Mfg. Co.*, 384 F. Supp. 2d 678 (2d Cir. 2005) ...........................16

*Samuel v. Bellevue Hosp. Ctr.*, 366 Fed. App'x 206 (2d Cir. 2010) .................................11

*SmithKline Beecham Consumer Healthcare L.P. v. Watson Pharm., Inc.*, 211 F.3d 21 (2d Cir. 2000)..........................................................................20

*Starr v. Sony BMG Music Entm't*, 592 F.3d 314 (2d Cir. 2010) .......................................11

*Starter Corp. v. Converse, Inc.*, 84 F.3d 592 (2d Cir. 1996) .................................15, 16, 17

*Tasini v. N.Y. Times Co., Inc.*, 206 F.3d 161 (2d Cir. 1999).............................................21

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471 (2d Cir. 2006) .................................12

*Ulloa v. Universal Music Grp.*, 303 F. Supp. 2d 409 (S.D.N.Y. 2004)............................21

*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001).........................................19

**STATUTES**

17 U.S.C. § 101 ...................................................................................................1

17 U.S.C. § 106 .................................................................................................19

17 U.S.C. § 410(c) ............................................................................................19

17 U.S.C. §§ 501-504 ........................................................................................13

22 U.S.C. § 2201 ...........................................................................................9, 12

28 U.S.C. § 1338 ...........................................................................................1, 18

28 U.S.C. § 1367(a) ..........................................................................................18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) ......................................................................................8

Plaintiff Christopher Roule submits this memorandum of law in opposition to the motion to dismiss the Amended Complaint filed by Defendants Keith Townsend Mitchell ("Mitchell") and Ketomi Company ("Ketomi") (collectively, "Defendants").

## PRELIMINARY STATEMENT

This is a dispute over copyrighted jewelry designs.  The Amended Complaint alleges that Defendants (1) infringed original jewelry designs authored solely by Plaintiff (the "Roule Designs") and (2) breached a contractual agreement (the "Agreement") to share revenues derived from the exploitation of certain other designs to which both Plaintiff and Mitchell contributed design elements (the "Joint Designs").  This is a classic "hybrid" copyright action – that is, it raises both contract and copyright claims.  Under well settled law, this Court has exclusive jurisdiction over the copyright claims and has pendent jurisdiction over the contract (and other state law) claims.

The Amended Complaint alleges two separate bases for federal jurisdiction – each of which is the exclusive province of the federal courts:  (1) the Declaratory Judgment Act claim, which seeks a declaration of copyright ownership pursuant to the Copyright Act, 17 U.S.C. §§ 101 *et seq*.; and (2) the copyright infringement claim.  Because both claims require the Court to construe the Copyright Act, jurisdiction not only is proper in federal court, it is ***exclusive***.  28 U.S.C. § 1338.  Plaintiff is entitled to seek relief in the only forum that is entitled to adjudicate his copyright claims.

In an effort to deny Plaintiff the relief to which he is entitled under the Copyright Act, Defendants invent a claim that all of the jewelry designs, whether authored jointly or solely by Plaintiff, are subject to the Agreement and that Plaintiff's claim, therefore, is "a

pure contract dispute." Def. Mem. at 1.  There are numerous problems with Defendants'

argument:  First, that is not what the Amended Complaint says, and it is the well-pleaded

allegations of the Amended Complaint, not Defendants' recasting of them, that controls.

Further, although Defendants fail to understand the distinction, the Agreement described in

the Amended Complaint applies only to Joint Designs; the Amended Complaint avers that

it did not apply to independent designs like the Roule Designs.  Am. Compl. ¶¶ 2, 12.

Plaintiff's independent Roule Designs are the subject of the copyright infringement claim.

Because this well-pleaded allegation must be accepted as true on a motion to dismiss, the

Roule Designs are outside the Agreement and the sale of jewelry incorporating those

designs by Defendants raises pure copyright issues within this Court's exclusive

jurisdiction.

Moreover, the Amended Complaint plainly alleges that Defendants:  (1) had, in

effect, repudiated the Agreement by December 2009, *id.* ¶¶ 31–33; (2) had been ordered by

Plaintiff to cease and desist from further infringing conduct on May 19, 2010, and again on

June 24, 2010, *id.* ¶¶ 34, 36; and (3) expressly terminated the Agreement on June 14, 2010.

*Id.* ¶ 35.  Consequently, any implied license that Defendants may have had to the Roule

Designs under the Agreement or otherwise ceased to exist by December 2009.  *Id.* ¶¶ 31–

33.  Despite having no valid license to the Roule Designs after December 2009,

Defendants continued to produce and sell tens of thousands of dollars of Roule Designs as

late as June 26, 2010.  *Id.* ¶¶ 34–35.  These infringing sales, which Defendants' motion

ignores entirely, are not governed by the Agreement and alone provide the Court with

jurisdiction.

Defendants' motion also largely ignores Plaintiff's claim for declaratory relief, brushing it off with the observation that the Declaratory Judgment Act itself does not confer federal jurisdiction.  Def. Mem. at 18.  That may be true in some situations, but when the underlying subject matter involves the application of the Copyright Act, as claims involving construction of the work-for-hire and other provisions of the Copyright Act plainly do, federal jurisdiction is proper.  The dispute over Plaintiff's ownership of the copyrights to the Roule Designs could not be more plain.  Defendants have expressly threatened to hold Plaintiff "accountable" if he exercises his rights as copyright owner of the Roule Designs.  Am. Compl. ¶ 35.  Defendants also have asserted that the Joint Designs and Roule Designs are their exclusive property under the work-for-hire doctrine. *Id*.  Defendants defy credulity in arguing that there is no copyright controversy regarding ownership of the Roule Designs when their own brief repeatedly attacks Plaintiff's claim of ownership (while simultaneously ignoring that the Copyright Office has issued certificates of registration identifying Plaintiff as the author of them).  Def. Mem. at 8, 10 (characterizing Roule Designs as created by the "Business" and/or by Defendant Mitchell and Plaintiff jointly).

If Defendants feel intimidated by being required to account for their action in federal court, they have only their own broken promises and outrageous behavior to blame. They have repeatedly breached their Agreement to pay Plaintiff, attempted to appropriate his copyright designs as their own and sold jewelry that Plaintiff designed without paying him.  Because the Amended Complaint pleads claims arising under the Declaratory Judgment Act and the Copyright Act, Defendants' motion should be denied.  If, however,

the Court were to identify any pleading defects, Plaintiff respectfully requests leave to amend.

## STATEMENT OF FACTS

### A.    The Parties' Business Relationship

Between 2005 and 2007, Plaintiff, an established jewelry designer, and Mitchell decided to collaborate for the purposes of producing and selling jointly designed jewelry. Am. Compl. ¶¶ 11-12.  The parties did not form a "business" or other joint venture, Def. Mem. at 3-4; rather, Plaintiff, as an independent contractor, "collaborat[ed]" with Mitchell, Am. Comp. ¶ 11, and, pursuant to a "business relationship," *id.* ¶ 12, "contributed" "designs" and "manufacturing techniques," *id.* ¶ 17, resulting in a "successful jewelry business" belonging to and operated by Defendants.  *Id.* ¶ 14.  The parties agreed that jewelry sold by Defendants would bear the "Mitchell-Roule" name.  *Id.* ¶ 15.

Although the parties did not enter into a written agreement, Plaintiff and Mitchell set forth the basic terms of their collaboration orally (the "Agreement").  *Id.* ¶ 12.  Pursuant to the Agreement, Plaintiff and Mitchell agreed, among other things, that revenues derived from the sale of Joint Designs would be shared, with one-third of the gross proceeds going to Plaintiff and two-thirds to Defendants to compensate for the fact that Defendants were responsible for financing the operations.  *Id.*  Ketomi was not a party to the Agreement. *See id.*

The Agreement was not a "Joint Authorship Agreement" as claimed by Defendants.  *See, e.g.,* Def. Mem. at 3, 4, 9, 12.  The Agreement merely provided that any jewelry jointly designed by Plaintiff and Mitchell would be co-owned by them.  Am.

Compl. ¶ 12(a).  The parties had no agreement, oral or otherwise, with respect to works that were designed solely by one party, such as the Roule Designs.  *See id.* ¶ 12.  The Amended Complaint does not state and the Agreement did not provide that Plaintiff and Mitchell were "co-authors" of all designs sold under the name Mitchell-Roule or that all of Plaintiff's designs were "created by the Business."  Def. Mem. at 5, 8-10.

**B.      Defendants' Failure to Compensate Plaintiff**

The earliest jewelry designs were based on an original technique and designs conceived and engineered by Plaintiff.  Am. Compl. ¶¶ 16-17.  Some of these early designs, called Cage Pieces, were authored jointly by Mitchell and Plaintiff, while others were authored solely by Plaintiff.  *Id.* ¶ 16.  Accordingly, in 2006, Mitchell and Plaintiff registered copyrights for some, but not all, of the Cage Pieces – *i.e.*, a selection of Cage Pieces that Mitchell and Plaintiff jointly authored.  *Id.* ¶ 19.  Only the Cage Pieces that were designed by both Plaintiff and Mitchell are considered Joint Designs.  *See id.* ¶¶ 2, 12(a).  The registration recites that Mitchell and Plaintiff are joint authors of the Cage Pieces identified in the registration.  *Id.* ¶ 19.  In addition, Mitchell and Plaintiff submitted an affidavit to the Copyright Office stating that the works identified in the registrations were "***not*** work[s] created for hire," *id.* (emphasis added), refuting Defendants' unsupported claim that the works were "created by the [so-called] Business."  *See* Def. Mem. at 10.

Sales of Cage Pieces began to take place in 2007.  Am. Compl. ¶ 20.  At that early juncture, Defendants appeared to comply with the terms of the Agreement and paid one third of the initial revenues to Plaintiff.  *Id.*  That, however, did not continue.  In 2008,

Bergdorf Goodman began to carry the Cage Pieces on consignment in its department store in New York City.  *Id*. ¶ 21.  Despite hundreds of thousands of dollars of sales at Bergdorf Goodman and in private sales during 2008, 2009 and 2010, and notwithstanding Plaintiff's repeated demands to be paid his share of the revenue in accordance with the terms of the Agreement, Defendants refused to make required payments to Plaintiff with respect to sales of Joint Designs.  *Id*. ¶¶ 22, 31.

**C.      The Shaker Pieces**

In 2008, Plaintiff began work on a new line of jewelry that eventually became known as the Shaker Pieces.  *Id*. ¶ 23.  At the time that Plaintiff began to create Shaker Designs, Defendants were not yet in flagrant breach of their obligations under the Agreement, and so Plaintiff reasonably believed that the new designs would eventually be governed by the Agreement.  *See id.* ¶ 31.  Consequently, he allowed some of the initial Shaker Designs be added to the line of jewelry being sold under the Mitchell-Roule name "[i]n reliance on the Agreement" and in the expectation that Defendants would bring themselves into compliance with its terms.  *Id*. ¶ 23.

All of the Shaker Designs were authored either primarily or solely by Plaintiff.  *Id*. ¶ 25.  If Mitchell contributed any authorship to a Shaker Design, it is treated as Joint Design.  *Id.; see also* ¶ 2, 12.  The remainder of the Shaker Designs were created solely by Plaintiff and are referred to as Roule Designs.  *Id*. ¶ 25*; see id.* ¶ 2, 12.  While Plaintiff was working on the development of the Shaker Designs, it became increasingly clear that Defendants had no intention of abiding by the terms of the Agreement as to Joint Designs.  *See id.* ¶ 31.  Consequently, Plaintiff continued to work on the Roule Designs for use in his

6

own independent business and intended that the Roule Designs would become subject to the Agreement only if and when Defendants brought themselves into compliance with its terms as to Joint Designs.  *See id.* ¶¶ 28, 31, 33.

### D.      Defendants' Repudiation of the Agreement and Infringement

In December 2009, Defendants had by their actions effectively repudiated the Agreement by repeatedly failing to pay Plaintiff what he was owed and denying that they were obligated to do so.  *Id.* ¶ 33.  Plaintiff informed Mitchell that, as a result of Defendants' repeated and persistent failure to compensate him in accordance with the Agreement, Plaintiff no longer would participate in creating Joint Designs.  *Id.*  Plaintiff accordingly "redirected his creative efforts back to his own independent jewelry business," ceased to provide designs to Defendants and proceeded to register "certain Shaker Pieces of which he is the sole author with the United States Copyright Office."  *Id.* ¶ 28, 29.  Joint Design Shaker Pieces were not included in the registration.  *Id.* ¶ 29.  The Copyright Office issued certificates of registration for the Roule Designs with an effective date of April 15, 2010.  *Id.*  Upon learning of the applications, Defendants' former counsel asserted that Plaintiff, without notice, filed for the registrations in a "deceptive and underhanded fashion" and that Defendants would "initiate action to contest" ownership of the Roule Designs to ensure that "all responsible will be held accountable."  *Id.* ¶ 35.  Similarly, in an email dated June 14, 2010, Defendants' counsel asserted that the Roule Designs were works made for hire and thus Defendants' sole property.  *Id.*

In connection with his independent jewelry business, Plaintiff is currently investing significant time, energy and sums of money to produce prototypes and samples of new

jewelry incorporating the Roule Designs and is soliciting potential customers to purchase and display jewelry incorporating the Roule Designs.  *Id.* ¶ 37.

On May 19, 2010, Plaintiff's counsel advised Defendants' prior counsel that Defendants were selling Roule Designs without legal authority and in violation of Plaintiff's copyrights.  *Id.* ¶ 34.  Then, on June 14, 2010, Defendants expressly terminated the Agreement (and with it any arguable right to market the Roule Designs).  *Id.* ¶ 35.  In a subsequent phone call on June 24, 2010, Plaintiff's counsel again expressly ordered Defendants to cease and desist from further sales of any jewelry designed by Plaintiff.  *Id.* ¶ 36.  Despite these events, Defendants have continued to infringe Plaintiff's copyright, including the sale of at least one Roule Design after the June 14 termination and at least three Roule Designs since they were advised on May 19, 2010 that the sale of Roule Designs infringed Plaintiff's copyrights.  *Id.* ¶ 35.  Furthermore, on information and belief, Defendants have substantial inventories of infringing jewelry available to sell in the future. *Id.*

On June 28, 2010, Plaintiff commenced this action for copyright infringement, breach of contract and violation of Plaintiff's right of publicity arising out the unauthorized production and sale by Defendants of the Joint Designs and Roule Designs.  (Dkt. entry no. 1.)  On August 3, 2010, Defendants moved to dismiss, arguing that, because an implied license had been granted, the Complaint failed to state a cognizable claim for copyright infringement, and that without such a claim, the Court lacks subject matter jurisdiction. (Dkt. entry nos. 8, 9.)  Plaintiff submitted a brief in opposition to the motion and amended the Complaint on August 27, 2010 as of right, adding a cause of action under the

Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, seeking a declaratory judgment regarding Plaintiff's ownership of copyrights in the Roule Designs.  The Court dismissed the motion as moot on September 8, 2010.  (Dkt. entry no. 13.)

On September 28, 2010, Defendants moved to dismiss the Amended Complaint, alleging that the claims in the Amended Complaint presents "purely a contract dispute" that belongs in state court.  (Dkt. entry nos. 14, 15.)  Defendants brief in support of its motion is laced with assertions, inferences and claims that are not supported by the Amended Complaint.  Consequently, they should be ignored for purposes of determining whether this action should be dismissed.  In addition to the errors corrected above within the statement of facts, a small selection of these statements are listed below, along with a counterstatement of the facts as actually alleged in the Amended Complaint:

- *"Plaintiff and [Defendants] entered into a joint authorship agreement pursuant to which Roule and Mitchell co-authored copyrightable jewelry designs."*  Def. Mem. at 1, 3.  The Amended Complaint pleads that Plaintiff and Mitchell entered into an Agreement governing only Joint Designs.  Am Compl. ¶ 12.  Regarding authorship, the Agreement merely provided that Mitchell and Plaintiff would be joint authors of the designs on which they "collaborate[d]" or which they "created jointly."  *Id.* ¶ 12(a).

- "*The Amended Complaint simply does not plead that Roule created any [independent jewelry designs.]*"  Def. Mem. at 1.  To the contrary, the Amended Complaint specifically pleads that the Roule Designs are independent designs – *i.e.* jewelry designed solely by Plaintiff that is not governed by the Agreement.  Am. Compl. ¶¶ 2, 25, 29, 34.

- "*[T]he business sold these [Roule Designs] because the business, pursuant to the joint authorship Agreement, created them.*"  Def. Mem. at 2, 10.  To the contrary, the Amended Complaint alleges plainly that Plaintiff was the sole author of the Roule Designs, as reflected in the certificates of registration for them issued by the U.S. Copyright Office.  Am. Compl. ¶¶ 2, 25, 29, 34.

9

- *"[The] Cage Pieces which Mitchell also allegedly had no role in creating [are] co-authored 'Joint Designs' under the Agreement. . . . All Cage Pieces are "Joint Designs" under the Agreement."* Def. Mem. at 4, 11; *see also id.* at 4 ("While the Amended Complaint alleges that Mitchell had no role in authoring [certain] Cage Pieces, it also alleges that they are within the scope of the joint authorship Agreement."). The Amended Complaint alleges nothing of the sort. Instead, it alleges that some Cages Pieces were designed jointly and some Cage Pieces were designed solely by Plaintiff. Am. Compl. ¶ 16. The Agreement, which was not a joint authorship agreement, governs only the Cage Pieces that were jointly designed. *Id.* ¶ 12.

- *"Plaintiff's breach of contract claim is premised upon sales of Cage Designs, including those 'authored solely by Plaintiff.'"* Def. Mem. at 4. To the contrary, Count III of the Amended Complaint specifically states, "Defendants breached the Agreement by failing to, without any justification in law or fact, pay Plaintiff one-third of the revenue from sales of ***Joint Design jewelry***." Am. Compl. ¶ 47 (emphasis added).

- *"The Amended Complaint does not contain a single allegation that the [Roule] Designs were 'independent jewelry designs' or 'other business endeavors.'"* Def. Mem. at 10. The Amended Complaint did not need to plead anything of the sort because it plainly alleges that the Roule Designs were not part of the Agreement. Am. Compl. ¶ 12. The Roule Designs were, therefore, obviously "independent jewelry designs" or "other business endeavors."

- *"[T]he Amended Complaint does not contain a single allegation regarding an act of creation by Plaintiff of the [Roule] Designs, leaving the conclusions of sole ownership and authorship unsupported."* Def. Mem. at 24. To the contrary, the Amended Complaint describes the methods by which Plaintiff designed Roule Designs, Am. Compl. ¶ 24, and states that the Roule Designs "were clearly created solely by Plaintiff" and that "Mitchell made no contribution to such designs." *Id.* ¶ 25.

Under the rules governing Defendants' motion to dismiss, each of the above assertions, inferences and claims (and many others in Defendants' brief) have no foundation in the Amended Complaint and should not be considered by the Court. Without these statements, Defendants' argument is devoid of substance and wholly without merit.

## ARGUMENT

### I.     Motion to Dismiss Standard

When considering a motion to dismiss under Rule 12(b)(6), the question for the Court is whether the complaint alleges "'enough facts to state a claim that is plausible on its face.'"  *La Grande v. DeCrescente Distrib. Co., Inc.*, 370 Fed. App'x 206, 208-09 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  This pleading standard "need not contain detailed factual allegations," *id.* at 213, nor does it require a plaintiff to plead "specific evidence" or "extra facts."  *Arista Records LLC v. Doe*, 604 F.3d 110, 120-21 (2d Cir. 2010).  A plaintiff "need not establish a *prima facie* case," "only sufficient facts to give the defendant fair notice of [the claim] and the grounds upon which it rests."  *La Grande*, 370 Fed. App'x at 211 (internal quotations omitted).

In applying this test, the court should not weigh evidence or assess the plaintiff's probability of success.  *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 322, 325 (2d Cir. 2010); *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).  Rather, as the Second Circuit in *Starr* recently explained:

> Asking for plausible grounds to infer [a claim] does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [such a claim].  And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.

*Starr*, 592 F.3d at 325 (internal quotations and citations omitted).  All of the Second Circuit's recent decisions are in accord.  *See Samuel v. Bellevue Hosp. Ctr.*, 366 Fed. App'x 206, 207 (2d Cir. 2010) (court should not anticipate plaintiff's ability to prevail at

motion to dismiss stage); *Panther Partners Inc. v. Ikanos Commc'n, Inc.*, 347 Fed. App'x 617, 620 (2d Cir. 2009) (plausibility does not require plaintiff to plead with specificity).

Similarly, in considering a motion to dismiss for lack of subject matter jurisdiction, the court "must accept as true all of the factual allegations contained in the complaint," and construe the complaint in the light most favorable to the plaintiff. *Bell Atl. Corp.,* 550 U.S. at 572; *see Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *see also Linzer Prods. Corp. v. Sekar*, 499 F. Supp. 2d 540, 546 (S.D.N.Y. 2007) (citing *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted).

## II.    The Amended Complaint Pleads An "Actual Controversy" Arising Under the Copyright Act.

The Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, provides, in pertinent part:

> In a case of ***actual controversy*** within its jurisdiction, . . .
> any court of the United States, upon the filing of an
> appropriate pleading, may declare the rights and other legal
> relations of any interested party seeking such declaration.

28 U.S.C. § 2201(a) (emphasis added).

Two elements must be pled to establish subject matter jurisdiction in a declaratory judgment action:  (1) the existence of a federal question; and (2) an "actual controversy" between the parties. *Corp. v. Converse, Inc.*, 84 F.3d 592, 595 (2d Cir. 1996).  A claim arises under the Copyright Act if "(1) the complaint is for a remedy expressly granted by

the Act, *e.g.*, a suit for infringement or for the statutory royalties for record reproduction; *or* (2) the complaint asserts a claim requiring construction of the Act." *DeCarlo v. Archie Comics Publ'n, Inc.*, 127 F. Supp. 2d 497, 504 (S.D.N.Y. 2001) (emphasis added) (citing *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 349 (2d Cir. 2000)). Although the test is in the disjunctive, the allegations in the Complaint satisfy both prongs.

### A.   The Claim for Declaratory Relief Seeks Traditional Copyright Remedies and Requires Construction of the Copyright Act.

*DeCarlo* is directly on point. The plaintiff brought a claim in state court for a declaration of ownership of certain cartoon characters he allegedly had created. *DeCarlo*, 127 F. Supp. 2d at 502. The defendants removed the matter to federal court and plaintiff moved to remand for lack of federal subject matter jurisdiction, arguing that his claim for a declaration of ownership arose under state, not federal, law. *Id.* at 502-503. Judge Kaplan flatly rejected that contention, holding that plaintiff's claim for a declaration of copyright ownership "satisfies both alternative prongs of the test that determines whether a claim arises under the Copyright Act." *Id.* at 505. There, as here, the relief sought – "a declaration of ownership of the characters, an injunction against infringement of his claimed rights, and an accounting with respect to infringing uses—is that traditionally available under the Copyright Act." *Id.*; *see* Am. Compl. Prayer for Relief (seeking declaration of ownership, injunctive relief, damages and impoundment); 17 U.S.C. §§ 501-504 (providing for such remedies under the Copyright Act). There, as here, the "claim of authorship—in a situation in which there are conflicting stories about exactly who did what . . .—will require construction of the Act's work-for-hire provisions." *DeCarlo*, 127 F.

Supp. 2d at 505; Am. Compl. ¶ 35 (Defendants claim that they, pursuant to the work-for-hire provisions of the Copyright Act, own the Roule Designs); Def. Mem. at 10 ("the Disputed Designs were created *by the Business* (using its 'operations'")).

Defendants primary argument is that ownership of all of the Designs is governed by the Agreement and therefore by state law.  Def. Mem. at 8, 18-22.  This argument has no merit.  To begin, the factual premise of the argument is wrong:  The Amended Complaint alleges that Plaintiff is the sole author of the Roule Designs and that such designs are independent of, and not subject to, the Agreement.  Am. Compl. ¶¶ 2, 12, 25, 29, 34.  The only basis for determining ownership of the copyrights in these designs, therefore, is the Copyright Act.  Defendants' head-in-the-sand attitude toward these plain allegations does not make them go away.

Where, as here, a plaintiff "does not rely on the . . . contract to establish his ownership of the relevant copyrights, but [instead relies] on his authorship of the work," the question of ownership is governed by the Copyright Act, not the contract.  *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 390-91 (2d Cir. 2007) (finding that "the uninterrupted nature of [the plaintiff's] asserted ownership distinguishes [his] case from one in which a plaintiff-creator asserts that the relevant copyrights reverted to him upon breach of contract by the defendants").  In *Phillips*, the Court denied the defendant's motion to dismiss copyright infringement claims as arising under a recording contract between the plaintiff and defendant.  *Id.* at 391-92.  There, as here, the plaintiff did not allege that his ownership of the copyrights was tied to any rights or duties under the recording contract.  *Id.* at 391.  Instead, just as here, he alleged ownership of the copyright based on his acts of authorship.

*Id.* The Second Circuit, accordingly, held that his copyright claims did not arise out of the contract and were properly in federal court. *Id.* at 391-92; *see also Fifty-Six Hope Rd. Music Ltd. v. UMG Recordings, Inc.*, No. 08-6143, 2010 WL 3564258, at *11 (S.D.N.Y. Sep. 10, 2010) (granting declaratory judgment despite written agreements with record company regarding artist's employment status where court had to construe work for hire provisions of Copyright Act); *Barnhart v. Federated Dep't Stores, Inc.*, 04-3668, 2005 U.S. Dist. LEXIS 3631, at *10-*11 (S.D.N.Y. Mar. 8, 2005) (finding that, where authorship forms plaintiff's basis for rights in work, claim arises under federal law because Copyright Act is exclusive source of rights arising from authorship of work fixed in tangible form).

**B.     An "Actual Controversy" Exists Regarding Ownership of the Roule Designs.**

Under precedents decided prior to 2007, an "actual controversy" existed when (1) the defendant's conduct "created a real and reasonable apprehension of liability on the part of plaintiff"; and (2) the plaintiff "engaged in a course of conduct which ha[d] brought it into adversarial conflict with the defendant." *See Starter Corp.*, 84 F.3d at 595.

The Supreme Court's decision in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), liberalized this standard. *See AARP v. 200 Kelsey Assoc., LLC*, 06-81, 2009 WL 47499, at *6 (S.D.N.Y. Jan. 8, 2009) (noting that *MedImmune* "lowered the threshold for proving the existence of such controversies" "in the context of intellectual property-related declaratory judgment actions"). In *MedImmune*, the Supreme Court rejected the "reasonable apprehension" test and held that an actual controversy exists when "the facts

15

alleged, under all the circumstances, show that there is a substantial controversy, between

parties having adverse legal interests, of sufficient immediacy and reality to warrant the

issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127.[1]

The allegations of the Amended Complaint easily satisfy this test. There is a

substantial controversy over ownership of the Roule Designs – Plaintiff claims he owns

them and Defendants vigorously have asserted that they own them outright as works for

hire or jointly as co-authors. Am. Compl. ¶ 35; Def Mem. at 8-10. The parties obviously

have adverse interests; they are engaged in litigation over the rights to use the very same

copyrighted designs. *See Archie Comic Publ'n, Inc. v. DeCarlo*, 00-5686, 2001 WL

1543526, at *2 (S.D.N.Y. Dec. 3, 2001) (actual controversy "obvious" where parties

---

[1]   Some courts have continued to apply the two-prong test of *Starter* even after
*MedImmune*. *See, e.g.*, *Huurman v. Foster*, 07-9362, 2010 WL 2545865, at *8
(S.D.N.Y. Jun. 21, 2010) (citing *Cosa Instrument Corp. v. Hobre Instruments BV*, 698
F. Supp. 2d 345, 349 (E.D.N.Y. 2010)). The holding in *MedImmune* is based on the
Court's construction of Article III and nothing in the decision purports to limit it to
cases involving patents, as were at issue in *MedImmune*. *See MedImmune*, 549 U.S. at
126-127 (construing "actual controversy" requirement under Article III's "case or
controversy" requirement). Numerous courts, as a result, have correctly determined
that *MedImmune* overrules the "reasonable apprehension" standard. *See, e.g.*, *AARP*,
2009 WL 47499, at *6 (collecting cases from 10th Circuit, Federal Circuit and
Southern District of New York). In any event, Defendants' express threat to "initiate
action" to ensure "all responsible will be held accountable," Am. Compl. ¶ 35, easily
satisfies the reasonable apprehension test even if it applied. *See Ritz Hotel, Ltd. v.
Shen Mfg. Co.*, 384 F. Supp. 2d 678, 682 (2d Cir. 2005) (defendant's "mention[]" of
"the potential for a trademark infringement action," satisfied "the Second Circuit's
broad interpretation of reasonable apprehension"); *Mfr. Hanover Corp. v. Maine Sav.
Bank*, 225 U.S.P.Q. 525, 526-27 (S.D.N.Y. 1985) (letter referring to "problems" with
trademark sufficient for "reasonable apprehension"); *Jeffrey Banks, Ltd. v. Jos. A.
Bank Clothiers, Inc.*, 619 F. Supp. 998, 1002 (D. Md. 1985) (letter claiming use of
trademark by declaratory plaintiff was likely to violate the Lanham Act sufficient to
create "reasonable apprehension").

already in litigation).  Moreover, it could not be more clear from Defendants' brief that

Defendants dispute ownership of the Roule Designs.  *See, e.g.,* Def. Mem. at 8 ("Mitchell

is the co-author of the Disputed Designs); *id.* at 10 ("the Disputed Designs were created *by*

*the Business*") (emphasis in original).  And it is clear that the controversy is sufficiently

immediate:  Defendants repeatedly have asserted ownership of the Roule Designs as

purported works for hire, have threatened to "initiate action" to protect them and Plaintiff

has taken active steps toward the sale of jewelry incorporating such designs.  Am. Compl.

¶¶ 35-37; *see AARP*, 2009 WL 47499, at *9 (where party "has produced prototypes or

samples of the allegedly infringing products, begun soliciting . . . potential customers, or

otherwise invested significant sums of money in preparation for producing the goods, the

case or controversy requirement is likely to be satisfied") (collecting cases).

Even under the more stringent test in *Starter*, the Second Circuit recognized the

utility of declaratory judgment actions in intellectual property disputes.  The Second

Circuit explained that, because "[d]eclaratory judgment actions are particularly useful in

resolving [such] disputes . . ., the finding of an actual controversy should be determined

with some liberality."  *Starter*, 84 F.3d at 596.  As a result, it held that a court should

entertain a declaratory judgment action "(1) when the judgment will serve a useful purpose

in clarifying and settling the legal relations in issue, or (2) when it will terminate and

afford relief from the uncertainty, insecurity, and controversy giving rise to the

proceeding."  *Id.* at 597.  A declaratory judgment will serve both purposes, allowing the

parties to proceed with their separate business ventures without the "Damoclean threat of

impending litigation." *Linzer Prods. Corp.*, 499 F. Supp. 2d at 560 (S.D.N.Y. 2007) (internal quotations omitted).

Plaintiff's claim for declaratory relief, accordingly, is appropriate subject matter under the Declaratory Judgment Act.  Indeed, because the claim "arises under" the Copyright Act, this Court is the ***only*** forum that can determine ownership of the copyrights to the Roule Designs.  28 U.S.C. § 1338(a) (federal jurisdiction over "any civil action arising under any Act of Congress relating to . . . copyrights. . .***shall be exclusive of the courts of the states***") (emphasis added); *see Bassett*, 204 F.3d at 352-53 (cautioning against denying access to federal forum in cases involving both contract and copyright claims because "a plaintiff who is denied access to a federal forum . . . is thereby ***absolutely*** denied the benefit of copyright remedies" (emphasis added)).[2]

## III.    Plaintiff Has Properly Pleaded Copyright Infringement.

### A.    The Amended Complaint Alleges Infringing Sales by Defendants.

To establish a claim of copyright infringement, "a plaintiff with a valid copyright must demonstrate that:  (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,* 602 F.3d 57, 63 (2d Cir. 2010) (internal quotation omitted).  "The standard test

---

[2]    Because the Court has federal jurisdiction over the Plaintiff's Declaratory Judgment Act claim, it has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's state law claims.

for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001) (internal quotations omitted).

Plaintiff is the owner of the Roule Designs, for which the Copyright Office has issued certificates of registration.  Am. Compl. ¶ 29.  Indeed, the certificates of registration are prima facie proof of both Plaintiff's ownership and the validity of the copyrights in the Roule Designs.  *See* 17 U.S.C. § 410(c) (certificate of registration from United States Register of Copyrights is prima facie evidence of ownership of valid copyright); *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999) (alleged infringer bears the burden of rebutting presumption of copyright validity).

The Amended Complaint alleges that Defendants have produced and sold jewelry incorporating Plaintiff's copyrighted designs at Bergdorf-Goodman, as well as in private sales, since December 2009, without authorization.  Am. Compl. ¶¶ 28, 33, 34, 35.  This violates Plaintiff's exclusive rights under Section 106 of the Copyright Act, 17 U.S.C. § 106, to reproduce and distribute the copyrighted work and therefore states a prima facie claim of copyright infringement.

   **B.    The Amended Complaint Alleges Infringing Sales Outside the Scope of Any License.**

Defendants argue that its sales were impliedly licensed by Plaintiff and therefore non-infringing.  Def. Mem. at 13-14.  Defendants claim that, because the so-called "Business" was formed for the purposes of producing and selling jewelry and successfully

sold Roule Designs from 2006-2009, there must have been a license to sell the jewelry and the dispute is, therefore, solely over compensation under the Agreement. *Id.*

Defendant's freshly-minted "implied license" argument fails for three reasons. ***First***, to the extent Defendants argue that the sale of anything other than Joint Designs was pursuant to the parties' express Agreement, that argument is foreclosed by the well-pled allegations of the Amended Complaint. Am. Compl. ¶¶ 2, 12, 25, 29, 34, 35.

***Second***, to the extent Defendants argue that there existed some implied license, "a motion to dismiss is not the proper mechanism to raise defenses that are necessarily fact-intensive." *E. Gluck Corp. v. Rothenhaus*, 585 F. Supp. 2d 505, 512 (S.D.N.Y. 2008). As a result, a motion to dismiss can only be an appropriate vehicle to raise an affirmative defense "if the defense appears on the face of the complaint." *Official Committee of Unsecured Creditors v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) (stating that dismissal is appropriate only where "the complaint itself establishes the facts necessary to sustain [a] defendant's [affirmative] defense"). An implied license, furthermore, is found "only in narrow circumstances where one party created a work at the other's request and handed it over, intending that the other copy and distribute it," *SmithKline Beecham Consumer Healthcare L.P. v. Watson Pharm., Inc.*, 211 F.3d 21, 25 (2d Cir. 2000) (internal quotations and citations omitted), making it a particularly inappropriate affirmative defense to resolve on the pleadings. *See Pani*, 152 F.3d at 75; *E. Gluck Corp.*, 585 F. Supp. 2d at 512. An implied license does not appear on the face of the Complaint. The Agreement

itself does, but the Agreement expressly implies only to *Joint* Designs, not *Roule* Designs

which are the subject of Plaintiff's infringement claim.  Am. Compl. ¶¶ 2, 12.

> *Third*, the only fair inference to be drawn from the detailed factual allegations of

the Amended Complaint is that the Agreement (and any license pursuant to it) was

terminated by Defendants' own conduct (their material breach by repeated failures to pay

amounts due under the Agreement, Am. Compl. ¶¶ 31-33), by Defendants' express words

(June 14, 2010 email expressly terminating "any verbal agreement" between the parties, *id.*

¶ 35) and by Plaintiff's demands in May and June of 2010 that Defendants cease and desist

from further acts of infringement.  *Id.* ¶¶ 34, 36.[3]  Under well-settled law, any license was

revoked by any and all of these acts, yet Defendants continued to sell tens of thousands of

dollars of Roule Design jewelry (and to this day maintain a considerable inventory of

infringing product) after any conceivable license ceased to exist.  *Agee v. Paramount*

*Commc'n, Inc.*, 59 F.3d 317, 321 (2d Cir. 1995) (single act of infringement supports

federal jurisdiction); Am. Compl. ¶ 36 (alleging sale on June 26, 2010, more than month

after first cease and desist notice); *see Ulloa v. Universal Music Grp.*, 303 F. Supp. 2d 409,

417 (S.D.N.Y. 2004) (Jones, J.) (cease and desist "notice would clearly terminate any

license, entitling Plaintiff to damages for Defendants' use of [the copyrighted items] after

that date"); *Tasini v. N.Y. Times Co., Inc.*, 206 F.3d 161, 170 (2d Cir. 1999) ("[T]he fact

that a party has licensed certain rights to its copyright to another party does not prohibit the

---

[3]     These allegations are hardly "conclusory," Def. Mem. at 6, and demonstrate that
        Defendants' acts of copying were unauthorized, as alleged elsewhere in the
        Complaint.  Am. Compl. ¶¶ 2, 34, 39.

licensor from bringing an infringement action where it believes the license is exceeded or the agreement breached."), *aff'd,* 533 U.S. 483 (2001); *see Bassett*, 204 F.3d at 349; *see also Ortiz v. Guitian Music Bros., Inc.*, 07-3897, 2009 U.S. Dist. LEXIS 65191, at *8-*9 (S.D.N.Y Jul. 28, 2009); *Amy Axelrod, Inc. v. Simon & Schuster, Inc.*, 07-891, 2007 WL 2412257, at *4 (S.D.N.Y. Aug. 27, 2007) (finding Defendants' assertion that, due to their status as licensees, they cannot be liable for copyright infringement to be "flatly contradicted by Second Circuit authority").[4]

Defendants, moreover, attempt to argue that the Roule Designs are within the scope of the Agreement because Plaintiff provided designs, created in 2008, "[i]n reliance on the Agreement," Def. Mem. at 12 (quoting Am. Compl. ¶ 23), but did not focus his "creative efforts" on his "independent jewelry business" until January 2010. *Id.* (quoting Am. Compl. ¶ 28). Defendants place far too much weight on these phrases. Of course, Plaintiff continued to contribute designs "in reliance on the Agreement;" one would not expect to continue to contribute intellectual property to a business without compensation. There is no basis to conclude that by relying on the Agreement in this regard, "the Business" was the creator of the Roule Designs. That Plaintiff focused his efforts entirely on his "independent jewelry ***business***" in January 2010, after Defendants had long ago repudiated

---

[4]   Defendants also argue that Mitchell, as a co-author, rightfully licensed the Roule Designs to "the Business" without Plaintiff's consent. Defs. Mem. at 14. This argument has no merit as the Amended Complaint expressly alleges, contrary to Defendants' argument, that Mitchell ***was not*** a co-author of the Roule Designs. Am. Compl. ¶¶ 2, 25, 29, 32.

the Agreement, is no basis to infer that Plaintiff's individual independent jewelry ***designs*** were created by Defendants' business.[5]

Defendants' arguments that the copyright infringement claim should be dismissed because they do not arise under the Copyright Act are meritless.  Plaintiff has pled copyright infringement under the Copyright Act, and Defendants' motion should be denied for this reason as well.

---

[5]   Defendants argument that "the Business" created the Roule Designs and that the Roule Designs therefore are not "independent designs," Def. Mem. at 10-11, also misses the mark.  "The Business" is not the legal owner of the Roule designs merely because it produced and sold the designs.  *See id.*  The only way in which the Business could have "created" the Roule Designs would have been through a work-for-hire Agreement.  As discussed above, *see supra* Section II, this inference is flatly contradicted by the Amended Complaint.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny

Defendants' motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(6).

Dated: October 19, 2010
       New York, New York

                                   DEBEVOISE & PLIMPTON LLP


                                   By: /s/ Michael Potenza
                                        Michael Potenza
                                        (mpotenza@debevoise.com)
                                        Megan K. Bannigan
                                        (mkbannig@debevoise.com)
                                   919 Third Avenue
                                   New York, New York 10022
                                   (212) 909-7497 (telephone)


                                   *Attorneys for Plaintiff*

24

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 19, 2010, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which will send a

notice of electronic filing to all counsel or parties of record on the below service list

/s/ Michael Potenza_
Michael Potenza

David M. Pohl
Pohl LLP
275 Madison Avenue, 14th Floor
New York, NY 10016

*Attorney for Defendants*